UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


VIVIAN VERONICA AUSBORN,                    Civil Action No. 11-14371

      Plaintiff,                              HON. SEAN F. COX
                                            U.S. District Judge
v.                                          HON. R.  STEVEN WHALEN
                                            U.S. Magistrate Judge
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Vivian Veronica Ausborn brings this action under 42 U.S.C. §405(g),

challenging a final decision of Defendant Commissioner denying her applications for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the

Social Security Act.  Both parties have filed summary judgment motions which have been

referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the

reasons set forth below,  I recommend that Defendant's motion for summary judgment [Doc.

#19] be GRANTED and that Plaintiff's motion [Doc. #14] be DENIED.

## PROCEDURAL HISTORY

On July 2, 2007, Plaintiff Vivian Veronica Ausborn ("Plaintiff") filed  applications

for SSI and DIB, alleging disability as of August 15, 2003 (Tr. 187-191, 192-195).  After the

initial denial of the claim, she requested an administrative hearing, held on September 20,

2010 in Dallas, Texas before Administrative Law Judge ("ALJ") Michael Finnie (Tr. 80). Plaintiff, represented by attorney Thomas Dundon, testified by teleconference (Tr.86-110). Vocational Expert ("VE") Michael Gartman also testified (Tr. 111-116). On January 24, 2011, ALJ Finnie found that Plaintiff was not disabled (Tr. 22). On August 25, 2011, the Appeals Council denied review (Tr. 1-4). Plaintiff filed for judicial review of the Commissioner's decision on October 4, 2011.

## **BACKGROUND FACTS**

Plaintiff, born February 6, 1964, was two weeks shy of her 46th birthday when the ALJ issued his decision (Tr. 22, 192). She graduated from high school and worked previously as a motel housekeeper (Tr. 216, 219). Her application for benefits alleges disability as a result of asthma/sarcoidosis and diabetes (Tr. 215).

### A.    **Plaintiff's Testimony**

Plaintiff testified that she stood 5' 4" and weighed 220 pounds, adding that her weight fluctuated as a result of diabetes (Tr. 86). Plaintiff, currently incarcerated, reported that she had been placed on "light duty" work performing housekeeping chores (Tr. 87). She opined that the physical conditions of diabetes and sarcoidosis, both diagnosed in 2000, prevented her from performing full-time work (Tr. 88). She alleged that leg swelling due to diabetes created mobility problems (Tr. 88). She stated that she previously took Prozac, but was currently attempting to wean herself off the medication (Tr. 89). She stated that she continued to take Elavil for depression (Tr. 90).

Plaintiff estimated that her legs swelled two to three times every week (Tr. 91). She

-2-

stated that she coped with the condition by wearing support stockings (Tr. 91). She reported that she sometimes experienced blurry vision, opining that she believed that her insulin dosage was insufficient to quell diabetic symptoms (Tr. 91). She also reported recent "pins and needles" type pain in her left leg (Tr. 94).

Plaintiff testified that sarcoidosis caused breathing problems, stating that her ability to obtain satisfactory care was greater outside of prison (Tr. 94). She stated that the lung problems were responsive to Prednisone which improved, but did not cure, the condition (Tr. 95). She reported that she had been hospitalized for pneumonia in the past (Tr. 96). She indicated that she had not smoked since entering jail on September 26, 2009 (Tr. 96). Plaintiff reported that low back pain created difficulty standing on her feet for long periods of time (Tr. 96). She stated that she typically took Tylenol or other over-the-counter medication for the condition (Tr. 97). In addition, she reported that she experienced tendinitis in the right hand and knee, adding that she had surgery for carpal tunnel syndrome ("CTS") in 2008 (Tr. 97-98).

Plaintiff stated that she first experienced the mental health problems of anxiety and depression in 2009, but later added that she received treatment in 2008 for approximately one year (Tr. 100). She opined that her former drug use did not prevent her from managing her own money (Tr. 101). She stated that at times, she did not want to be around others, but acknowledged that she was capable of performing work that required interacting with the public and would not have trouble interacting with coworkers or supervisors (Tr. 101-102). She qualified her statement by stating that "I just have . . . a hard time being a people person"

-3-

(Tr. 102). She testified that she would be able follow simple instructions, but opined that she would experience difficulty concentrating or behaving in an emotionally stable manner (Tr. 102).

In response to prompting by her attorney, Plaintiff corrected her earlier testimony that she had not received mental health treatment until 2008, noting that she had actually received psychological treatment in 2004 (Tr. 104). She reported that she had taken four years of classes at a local college, but did not obtain a degree because being in class with others caused anxiety (Tr. 104). She acknowledged that she performed her own shopping chores, but did not like others to sit next to her on the bus (Tr. 105). She stated that she had been diagnosed with pulmonary fibrosis due to sarcoidosis and sleep apnea (Tr. 106). She alleged that she was unable to walk for more than one block before experiencing shortness of breath (Tr. 106). She reported that she currently used an Albuterol inhaler (Tr. 107).

In response to further questioning by the ALJ, Plaintiff denied that she could stand or walk for six to eight hours a day (Tr. 109-110). She stated that she would be unable to sit for six hours a day due to leg swelling (Tr. 110). She indicated that she could probably lift up to 20 pounds frequently, but would have trouble carrying that much weight due to breathing problems (Tr. 110).

### B.    Medical Evidence

#### 1. Treating Sources

A June, 2004 assessment showed a history of depression and drug relapses, lung conditions, and knee problems (Tr. 340). Plaintiff was deemed intelligent and motivated but

lacking in coping skills (Tr. 341). The same month, psychological treating notes state that Plaintiff was planning to get job training (Tr. 349). October, 2004 treating notes state that she was currently attending college and receiving good grades (Tr. 353). In June, 2005, Joseph Will, M.D. noted that Plaintiff had been recently hospitalized for chest pain, apparently unrelated to her breathing problems (Tr. 337). Psychological treating notes from July, 2005 state that Plaintiff was out of town visiting a sister (Tr. 363). October, 2005 treating notes state that she was hospitalized for pneumonia (Tr. 366).

January, 2006 psychological treating records state that Plaintiff had been suspended from her school program because of illness but was able to re-enter the following month (Tr. 369-370). November, 2006 treating notes by Dr. Will state that Plaintiff reported that her breathing had been "alright," but that she had trouble walking more than half a flight of stairs due to knee problems (Tr. 288). Dr. Will noted that Plaintiff tolerated a CPAP device for sleep apnea (Tr. 288). In May, 2006, Plaintiff reported that she had stopped using Advair, but continued to experience some degree of breathing problems (Tr. 333).

In January, 2009, Plaintiff denied shortness of breath (Tr. 469). July, 2009 treating notes show that Plaintiff required the use of an inhaler for respiratory problems (Tr. 521). The following month, psychiatrist Aruna Bravineni, noting a history of cocaine abuse, reported that Plaintiff was currently engaging in "med seeking" behavior (Tr. 520). Dr. Bravineni assigned her a GAF of 60[1] (Tr. 520). Diabetes control was deemed good (Tr. 463).

---

[1]

A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *Diagnostic and Statistical*

In August, 2009, Plaintiff stated that psychotropic medication was currently keeping symptoms of depression under control (Tr. 518). The following month, Plaintiff reported burning and pain in her feet (Tr. 515). She indicated that she wanted to lose weight and needed comfortable shoes (Tr. 512). Gym shoes were ordered on the basis of a diagnosis of diabetic neuropathy (Tr. 512). October, 2009 staff notes state that Plaintiff was currently working as a unit porter (Tr. 506). She exhibited appropriate behavior and grooming during group therapy (Tr. 506). In October, 2009, she reiterated that symptoms of depression were under control (Tr. 503). The same month, she complained of intermittent right wrist pain, but stated that she obtained relief from a wrist splint (Tr. 497).

In January, 2010, Plaintiff was prescribed support stockings (Tr. 475). She continued to smoke (Tr. 462). Plaintiff stated that she planned to obtain employment after leaving prison (Tr. 454). She exhibited depression (Tr. 452). She was diagnosed with an antisocial personality disorder and depression and assigned a GAF of 60 (Tr. 451). She participated appropriately in group therapy (Tr. 450). The following month, Plaintiff was ticketed for taking food from the chow hall (Tr. 446). March, 2010 notes state that Plaintiff had resumed her work as a unit porter (Tr. 435). In July, 2010, Plaintiff's glucose levels were deemed worse (Tr. 412). She requested placement on a diabetic diet (Tr. 412).

### 2. Non-Treating Sources

In May, 2007, SSA case notes point out that Plaintiff did not allege disability as a

---

*Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*)(4th ed. 2000).

result of a mental impairment, but stated that she did not like being around other people (Tr. 296). A Psychiatric Review Technique performed by Wayne Hill, PhD, found the absence of a mental impairment (Tr. 298).

In December, 2007, Michael J. Simpson, M.D. performed a consultive physical exam of Plaintiff on behalf of the SSA (Tr. 312-315). Plaintiff stated that lung problems prevented her from walking more than 100 feet, but admitted that she continued to smoke (Tr. 312). She denied that she had been treated for either peripheral neuropathy or retinopathy (Tr. 312). Dr. Simpson observed that Plaintiff did not use an assistive device or exhibit joint instability (Tr. 313). He recommended that Plaintiff lose weight (Tr. 314). He noted that pulmonary studies showed only mild obstruction (Tr. 315).

The same month, Daniel Blum, M.D. completed a Residual Functional Capacity Assessment of Plaintiff, finding that she could lift 20 pounds occasionally and 10 regularly; sit, stand, or walk for up to six hours in an eight-hour workday; and push and pull in the lower extremities without limitation (Tr. 319). Dr. Blum found that Plaintiff's ability to push/pull in the upper extremities was limited by respiratory problems (Tr. 319). She was deemed able to balance, stoop, kneel, and crouch frequently, but was limited to occasional climbing and crawling (Tr. 320). Plaintiff was also limited to frequent handling and fingering with the right hand due to carpal tunnel release surgery (Tr. 321). The Assessment noted the absence of visual or communicative limitations, but stated that Plaintiff should avoid concentrated exposure to temperature extremes (Tr. 321-322). Based on his review of the medical records, Dr. Blum found Plaintiff's allegations of physical limitations partially

-7-

credible (Tr. 325).[2]

## C. Vocational Expert Testimony

The ALJ posed the following question to the VE, taking into account Plaintiff's age, education and lack of past relevant work:

> Let me ask you to consider a hypothetical individual . . . with at least moderate difficulties in maintaining concentration, persistence of (sic) pace, such that

---

[2]

The transcript includes material submitted for Appeals Council consideration after the January 24, 2011 decision by ALJ Finnie (Tr. 526-685). Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695–96. Sentence Six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

Remand for the consideration of the latter submitted evidence is not warranted here. First, only a small portion of the later submitted material pertains to Plaintiff's condition prior to the January 24, 2011 condition (Tr. 665-684). These records are not inconsistent with earlier findings by treating sources and thus, do not form a basis for changing the ALJ's non-disability determination. *See Sizemore v. Secretary of Health & Human Services,* 865 F.3d 709, 711 (6th Cir. 1988)(To show that the newer evidence is material, Plaintiff "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence"). Second, Plaintiff has not provided "good cause" for the late submission of the records created before the administrative decision.

The portion of these records created after January 24, 2011 contain material suggesting that her psychological condition later improved (Tr. 625). Further, they are intrinsically irrelevant to the determination of whether she was disabled on or before January 24, 2011. If Plaintiff nonetheless believes that records created after that date support a disability claim, her remedy is to file a new application for benefits alleging an onset of disability after that date. *Sizemore,* 865 F.2d at 712.

they would be limited to simple routine tasks consistent with unskilled work and no more than occasional contact with the general public or coworkers, further, have physical restrictions such that they were limited to occasionally lifting and carrying twenty pounds, frequently lifting and carrying ten pounds, standing, walking with normal breaks for about six hours in an eight [hour] work day, sitting for about six hours in an eight hour work day, limited to no more than occasional climbing of ramps and stairs, no climbing of ladders, ropes or scaffolds. Also, on the right hand, limited to frequent handling and fingering with the right hand and further avoiding concentrated exposure to extreme cold, extreme heat, avoiding moderate exposure to fumes, odors, dust, gases and environments with poor ventilation.   Assuming a hypothetical individual with that residual functional capacity, could you identify jobs that exist[] in the economy that this individual could perform? (Tr. 112-113).

The VE replied that given the above limitations, the individual could perform the unskilled, exertionally light work of an assembly machine operator, DOT code 692.686-010, (1,200 positions in the Michigan economy) and  mail clerk, 209.687-026, (1,400)(Tr. 113, 116).[3] In the sedentary category, the VE testified that the hypothetical individual could work as a bench handler, 715.684-026 (1,300) and lens inserter, 713.687-026 (1,300) (Tr. 114). The VE stated that his job findings were consistent with the information found in the DOT (Tr. 114).   The VE found further that if Plaintiff were additionally restricted to lifting only 10 pounds or less and was able to stand or walk for about two hours each day but was incapable of sitting for six hours, all competitive employment would be precluded (Tr. 114).

---

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

The VE found that if "due to frequent episodes of pain and combination of other impairments," Plaintiff was unable to "sit, stand or walk a total of eight hours, five days a week on a regular and continuing basis" all competitive employment would be precluded (Tr. 43). She concluded by stating that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 43).

### D.  The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found that Plaintiff experienced the severe impairments of affective disorder, history of sarcoidosis, asthma, sleep apnea, inflammatory pulmonary fibrosis, obesity, diabetes mellitus, CTS, status post right carpal tunnel release, and a history of substance addiction disorder but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for light work within the following parameters:

> [S]imple routine tasks with no more than occasional contact with the general public, lift/carry 20 pounds occasionally and 10 pounds frequently; stand and walk for 6 hours in an 8 hour workday and sit for 6 hours in an 8 hour workday; occasionally push and pull with the right upper extremity; do no climbing of ladders, ropes, or scaffolds; do frequent handling and fingering with the right hand; and cannot work with poor ventilation and avoid concentrated exposure to extreme heat or extreme cold (Tr. 17).

Citing the VE's job numbers, the ALJ determined that Plaintiff could work as an assembler, bench handler, mail clerk, or lens inserter (Tr. 21-22).

The ALJ discounted Plaintiff's allegations of disability (Tr. 19-20). He noted that

-10-

Plaintiff's surgical history was limited to carpal tunnel release (Tr. 19). He observed that she did not require recurring hospitalizations for either diabetes or asthma, adding that she did not experience optical retinopathy or organ damage (Tr. 20). The ALJ found that Plaintiff's depression was well controlled with medication (Tr. 20).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

-11-

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The Hypothetical Question to the VE

Plaintiff argues first that the ALJ's hypothetical question did not account for her full degree of physical impairment.  *Plaintiff's Brief* at 18-19.   She disputes the finding that she was capable of light work, faulting the ALJ for relying on non-examining, rather than treating sources, in crafting the hypothetical question.  *Id.*  On a related note, she contends

that the vocational testimony that she was capable of 3,900 jobs existing in the State of Michigan did not constitute a "substantial number."  *Id.* at 19-21 (citing *Hall v. Bowen,* 837 F.2d 272 (6th Cir. 1988).

Plaintiff is correct that a hypothetical question constitutes substantial evidence only if it accounts for a claimant's full degree of work-related impairment.  *Varley v. Secretary of HHS,* 820 F. 2d 777, 779 (6th Cir. 1987).  However, while "[t]he hypothetical question ... should include an accurate portrayal of [a claimant's] individual physical and mental impairments," it need not list all of a claimant's maladies verbatim.  *Webb v. Commissioner of Social Sec.*, 368 F.3d 629, 632 (6th Cir.2004)(citing *Varley,*  820 F.2d at 779 (6th Cir. 1987)); *See also Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001).  In addition, the ALJ is not obliged to include discredited findings or all of Plaintiff's allegations in the hypothetical question. *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994).

Substantial evidence supports the ALJ's hypothetical limitations and RFC for a limited range of light work.  While Plaintiff cites treating records stating that she received treatment for breathing problems and diabetes related symptoms, the transcript also contains support for the conclusion that she could perform exertionally light work.  Pulmonary studies show only mild obstruction (Tr. 315).  The transcript shows that Plaintiff's breathing problems were well controlled with medication (Tr.  288, 521).  In August, 2009, Plaintiff requested and received gym shoes for the purpose of exercising and losing weight (Tr. 512).  Treating notes also state that Plaintiff was able to hold a job in prison as a unit porter which

-13-

would presumably require her to perform at least exertionally light work (Tr. 506). The fact that she may have experienced some degree of breathing problems and diabetic neuropathy did not prevent her from embarking on an exercise regime or working as a porter (Tr. 506, 512, 515, 435).

Plaintiff's related argument that the statewide jobs cited by the VE do not constitute a substantial number is similarly unavailing. First, the question of whether work exists in "substantial numbers" in the claimant's "immediate area" is irrelevant to whether work exists in "significant numbers" in the national economy for purposes of the Step Five determination. 20 C.F.R. § 404.1566(a). Here, the VE testified that Plaintiff could perform 160,000 jobs in the national economy. Plaintiff's reliance on *Malone v. Astrue* 2012 WL 1078932, *5 (M.D.Tenn. March 30, 2012), where the district court found that 16,900 *national* positions was not a substantial number, is distinguishable.

Second, while Plaintiff asserts that the total number of regional jobs found by the VE was 2,600, she ignores the additional finding that she could *also* perform 2,600 positions as either a bench handler or lens inserter at the sedentary exertional level (Tr. 113-114). As to the regional numbers, *Malone* is also distinguishable, since in that case, the VE found the existence of only 239 local jobs. *Id.* at *5. This Court is unaware of any case law stating that the current findings that 5,200 statewide jobs and 60,000, national, is not a "significant number."[4]

---

[4]

Recognizing that it is "impossible to set forth one special number as the boundary

-14-

### B.  Mental Disorders

Plaintiff also argues that the ALJ ignored evidence showing that she was disabled by her mental impairments.  *Plaintiff's Brief* at 21-24.  She makes a brief, related argument that the ALJ's credibility determination was based on an erroneous reading of the record.  *Id.* at 23.  Finally, she contends that the ALJ ought to have ordered a psychiatric evaluation.  *Id.* at 23-24.

"[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.' " *Cruse v. Commissioner of Social Sec.,* 502 F.3d 532, 542 (6th Cir.2007) (citing *Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir.1997)). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence." *Walters,* at 531. *See also Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir.1993); *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir.1989) ( *citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986)) (An ALJ's "credibility determination must stand unless 'patently wrong in view

---

between a 'significant number' and an insignificant number of jobs," the Sixth Circuit found in *Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1174 (6th Cir. 1990), *citing Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) that 1,350-1,800 jobs in the local economy constitute a significant number.  Other Circuits have found that in some circumstances, fewer than even 1,000 jobs in the local economy constitute a significant number.  *See Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs).  While the VE's job regional job numbers included the entire State of Michigan, even assuming that these numbers were halved, they would easily constitute a significant number under *Born.*

of the cold record' ").

Contrary to Plaintiff's argument, the ALJ was not required to accept her self-assessment of psychological limitations. The ALJ supported his finding of moderate, rather than marked, concentrational problems by noting that Plaintiff's psychological symptoms were controlled with medication and counseling (Tr. 19, 518). Plaintiff also contends that the ALJ imposed a heightened standard for a disability determination by noting that she did not have a history of assault (Tr. 20). However, the ALJ's observation that Plaintiff did not have a "a history of altercations or assaultive behavior" was one of many factors he considered in finding that her psychological problems did not render her disabled. He also noted that Plaintiff "was able to attend to the hearing proceedings rather closely and fully without considerable distraction or other difficulty" and cited treating notes stating that Plaintiff was able to participate appropriately in group therapy (Tr. 19-20, 450, 506). Moreover, the  RFC limiting Plaintiff to only occasional work with the general public sufficiently addresses her claims that she had problems communicating with others and liked to be alone (Tr. 17, 227).

Although Plaintiff asserts that the ALJ "totally ignore[d]" psychological treating records predating her incarceration, *Plaintiff's Brief* at 21, these records do not suggest greater limitations than those found in the RFC. While these records state that Plaintiff lacked coping skills, they also show that she was able to obtain high marks in college courses and travel to visit out-of-town relatives (Tr. 341, 353, 363). In any case, the ALJ was not required to discuss every page of record evidence to avoid remand. "[I]t is well settled that

'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Commissioner of Social Security,* 2006 WL 305648, *8-9 (6th Cir. 2006)(*citing Loral Defense Systems-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir.1999)).

Finally, Plaintiff argues that the ALJ ought to have ordered a consultive psychiatric testing pursuant to the Commissioner's Program Operations Manual System ("POMS") DI 24510.050C, which allows the ALJ to order additional testing in the instance where treating records are unavailable.  However, in the next sentence she contradicts herself by stating that she nonetheless "has a record of mental health treatment from acceptable sources that is sufficient to establish the degree and severity required to meet the disability standards of the Act." *Plaintiff's Brief* at 24 (internal citations omitted).   Plaintiff is correct that POMS DI 22505.012 applies to cases in which the Commissioner is "unable to obtain evidence and/or the claimant is unable to furnish evidence of disability from an acceptable medical source." However, because the evidence before the ALJ contained ample mental health treating records created within the year before his January, 2011 opinion was issued, remand on this basis is not warranted.

My recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's limitations, and it is of no import that I might find differently if this were *de novo* review. However, because the ALJ's decision was well articulated and within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court.   *Mullen v. Bowen*, *supra*.

-17-

## CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment [Doc. #19] be GRANTED and Plaintiff's motion [Doc. #14] DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                    s/ R. Steven Whalen
                                    R. STEVEN WHALEN
                                    UNITED STATES MAGISTRATE JUDGE

Date: January 4, 2013

-18-

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 4, 2013.

s/Johnetta M. Curry-Williams
Case Manager